40

 Fee Paid

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

GREGORY HITE; BRIDGET BUREAU, individually and as next friend and guardian of L.H., a minor; and DAVID ASHER, an individual,

          Plaintiffs,

*v.*

DAVID ALDRICH, individually and in his official capacity as Detective, Clare County Sheriff's Office; CLARE COUNTY, a Michigan municipal entity; JAMES HENRY; MICHAEL HENRY; LEE KRANTZ; KYLE SANCRAINT, individually and d/b/a his collection business; CATERPILLAR FINANCIAL SERVICES CORPORATION ("CAT FINANCIAL"); JOHN DOE COLLECTION AGENTS 1–5; and JOHN DOE JAIL INFORMANT,

          Defendants.

Case:2:26-cv-11948
Judge: Grey, Jonathan J.C.
MJ: Grand, David R.
Filed: 06-08-2026 At 09:17 AM
CMP HITE ET AL V. ALDRICH ET AL (DA )

**JURY TRIAL DEMANDED**

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

1. This action arises from a series of coordinated acts by public officials and private individuals that deprived Plaintiffs of property, liberty, business interests, and constitutional rights through the misuse of criminal investigations, judicial process, civil collection proceedings, and unauthorized access to private communications.

2. Plaintiffs allege that Defendant David Aldrich, acting under color of state law as a detective with the Clare County Sheriff's Office, knowingly and intentionally relied upon

false statements, material omissions, unauthorized filings, and coordinated conduct with private actors to initiate and further investigations, property seizures, collection actions, and criminal proceedings that lacked probable cause and were designed to accomplish objectives that could not be achieved through lawful means.

3.     Plaintiffs further allege that private Defendants knowingly participated in and benefited from these actions by assisting in the procurement and use of false information, unlawfully entering private property, interfering with contractual and business relationships, accessing protected communications, and coordinating efforts to obtain property and economic advantage at Plaintiffs' expense.

4.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the destruction of an excavation business, interference with ownership and possessory interests in real and personal property, loss of business opportunities, unlawful detention, invasion of privacy, emotional distress, substantial economic damages, and severe physical injuries to a minor child.

5.     Plaintiffs bring this action pursuant to 42 U.S.C. §1983, 18 U.S.C. §§1962 and 1964, 18 U.S.C. §2701, 18 U.S.C. §1030, Michigan's racketeering statutes, and related Michigan common-law causes of action.

### Overview of the Scheme

6.     This action arises from a coordinated scheme among law enforcement, private financial entities, and associated individuals to misuse criminal process and civil enforcement mechanisms to gain access to property, exert control over assets, and advance private financial interests under the guise of lawful authority.

2

7. At the center of the scheme was an agreement among Defendants to leverage false and misleading information to initiate and sustain a criminal investigation, while simultaneously coordinating private lenders and agents to execute seizures and enforcement actions beyond the scope of any lawful authority.

8. Defendants, including law enforcement officers, knowingly relied upon and amplified materially false statements and omissions in warrant applications and investigative communications, resulting in unlawful searches, seizures, and criminal charges.

9. In parallel, private Defendants, including financial institutions and their agents, coordinated with law enforcement to identify, locate, and access property not subject to any valid court order or judgment enforcement, including premises leased and controlled by non-parties.

10. This coordinated conduct culminated in the unlawful entry and seizure activity at 1610 Spring Avenue, a separate parcel not identified in any warrant or court order, despite explicit notice to Defendants that the property fell outside the scope of any lawful authority.

11. The actions of Defendants were not isolated or accidental, but part of a pattern of coordinated conduct involving the use of interstate communications, false representations, and abuse of legal processes to achieve a common objective.

12. As a direct and proximate result of this scheme, Plaintiffs suffered constitutional violations, property interference, financial harm, and personal injury.

## PARTIES

13.     Plaintiff Gregory Hite is a natural person and, at all relevant times, a citizen of the State of Michigan who resides in Clare County, Michigan. At all relevant times, Hite operated an excavation operation which generated approximately five hundred thousand dollars (and growing) in net annual income before its destruction by the acts alleged below.

14.     Plaintiff Bridget Bureau is a natural person, the lawful wife of Gregory Hite, and at all relevant times a citizen of Michigan, resident in Clare County. She was incarcerated in Clare County Jail starting February 20, 2026, under a one-hundred-thousand-dollar-per-count bond and a no-contact order that prevents her from communicating with her husband to this day. She appears both in her individual capacity and as next friend and legal guardian of her minor daughter, L.H., whose initials are used pursuant to Fed. R. Civ. P. 5.2(a).

15.     Plaintiff David Asher is a natural person and, at all relevant times, a citizen of Michigan. He was the lawful tenant in possession of the premises located at 1610 Spring Avenue, Clare County, Michigan, pursuant to a valid lease agreement with GLR Holdings, LLC. He maintained exclusive possessory rights to the leased premises, including the right to exclude others.

16.     Defendant David Aldrich is, on information and belief, a natural person, a citizen of Michigan, and at all relevant times a detective/sergeant employed by the Clare County Sheriff's Office. He is sued in his individual capacity for damages and in his official capacity for prospective relief. All acts of Aldrich described below were undertaken under color of state law within the meaning of 42 U.S.C. § 1983.

4

17.    Defendant Clare County is a Michigan municipal entity capable of suing and being sued. It is responsible under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), for policies, customs, and the acts of final policymakers whose decisions caused the constitutional deprivations alleged below.

18.    Defendant James Henry is a natural person and, on information and belief, a citizen of Michigan residing in Clare County. He is the person whose grievance precipitated the scheme alleged.

19.    Defendant Michael Henry is a natural person, the brother of James Henry and, on information and belief, a citizen of Michigan.

20.    Defendant Lee Krantz is a natural person and, on information and belief, a citizen of Michigan. Krantz was the contract-for-deed vendor of the Buckhorn Saloon to Bureau.

21.    Defendant Kyle SanCraint is a natural person and, on information and belief, a citizen of Michigan who operates a debt-collection and asset-recovery business under his own name and/or unregistered assumed name. He is sued individually and d/b/a his collection business.

22.    Defendant Caterpillar Financial Services Corporation ("CAT Financial") is, on information and belief, a corporation organized under the laws of Delaware with its principal place of business in Nashville, Tennessee, that regularly transacts business in Michigan, including in this District.

23.    Defendant John Doe Collection Agents 1 through 5 are the unidentified agents, employees, or independent contractors of SanCraint who accompanied him on February

5

2–4, 2026, entered the leased premises at 1610 Spring Avenue without authority, and antagonized Plaintiffs' dogs as alleged below.

24. Defendant John Doe Jail Informant is the unidentified employee, contractor, inmate, or other person at or connected with the Clare County Jail who accessed and disclosed Bureau's communications to Krantz and/or Aldrich—to the extent that the John Doe Jail Informant is not Aldrich.

## JURISDICTION AND VENUE

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more Defendants reside within this District and/or because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District. In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction within the State of Michigan and no other district provides a substantially more appropriate forum for the resolution of all claims asserted herein.

26. This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983; 18 U.S.C. §§ 1962 and 1964 (Racketeer Influenced and Corrupt Organizations Act); 18 U.S.C. § 2701 (Stored Communications Act); and 18 U.S.C. § 1030 (Computer Fraud and Abuse Act).

## FACTUAL ALLEGATIONS

27. Gregory Hite is a successful entrepreneur who operated a trailer manufacturing business in Kent County, Michigan. James Henry assisted Hite at the trailer business on a few occasions and, later, with excavation jobs.

6

28. In or about 2021–2022, Henry expressed a desire to start an excavation company versus working at low wages for his parents' excavation company.

29. Hite, who owned significant excavation equipment, agreed to help: Henry would rent Hite's equipment during startup, giving Hite rental income and Henry a means of entry into the excavation market.

30. Henry's parents owned an established Clare-area excavation company known as Henry Excavating, LLC, a Michigan limited liability company. Henry's parents initially declined to sell the business to their son. Hite and Henry accordingly formed Henry Excavations, LLC, as the vehicle for Henry's new operation.

31. Part of the reason for the chosen name was to leverage the existing goodwill of the similarly named Henry Excavating, LLC, a lawful branding strategy reflecting that there is no trademark or other exclusive-use right in a surname absent registration and secondary meaning.

32. Eventually, Henry's parents changed course and agreed to sell. They sold the assets of Henry Excavating, LLC, to James Henry, not the membership interests in the LLC.

33. Hite personally reviewed the asset-purchase documentation and knew with certainty that Henry never acquired ownership of the LLC itself, a material fact that Aldrich, as detailed below, would later deliberately conceal from a magistrate.

34. Following the asset sale, Henry Excavating, LLC fell out of good standing status with the Michigan Department of Licensing and Regulatory Affairs, Corporations Division.

35.     Sometime thereafter, Henry received a Kubota Skid Steer manual in the mail that he had not ordered. He contacted the dealer and learned that Hite had started his own competing excavation operation, using similar Henry-related branding.

36.     Henry considered suing Hite but learned that he had no claim: he did not own Henry Excavating, LLC, he had acquired only its assets, and he held no trademark or other protectable intellectual property that would permit him to exclude Hite from the excavation market or from a similar name. In December 2022, unable to accept that the law afforded him no remedy, Henry telephoned Hite and accused him of "stealing" Henry Excavating, LLC. In the same conversation, Henry threatened to kill Hite and said he did not care whether he went to jail.

37.     Shortly thereafter, Hite encountered Michael Henry, James' brother, at a public auction. Michael Henry stated words to the effect that he would "beat the shit out of" Hite "if people weren't around." Hite reasonably understood the statement as a present manifestation of intent to assault him, tempered only by the incidental presence of witnesses, and feared that Michael Henry would carry out the threat on any future occasion when they were alone.

38.     Having failed in the civil law, James Henry turned to his childhood friend, Defendant David Aldrich, a detective with the Clare County Sheriff's Office. Henry and Aldrich agreed to use the criminal process to accomplish what the civil process would not: the destruction of Hite's excavation business.

39.     Pursuant to that agreement, and at Aldrich's direction, Henry filed a sworn complaint with the Clare County Sheriff's Office alleging that Hite had stolen the "identity" of Henry Excavating, LLC. The complaint was false. Henry did not own the

LLC; the LLC had been abandoned by its actual owners, who had ceased filing annual reports; and Henry's purchase was limited to the assets. Aldrich knew the complaint was false or recklessly disregarded its falsity.

40. Next, at Aldrich's direction, Henry filed an annual report with the Michigan Secretary of State purporting to restore Henry Excavating, LLC to good standing. Henry had no lawful authority to make that filing because he did not own the LLC and was not an officer, member, manager, or resident agent of it. The filing was a knowingly false statement transmitted through the United States mail and/or interstate wires.

41. Aldrich then drafted and submitted an affidavit in support of a search and seizure warrant to a Clare County magistrate. The affidavit averred that Hite had stolen the identity of Henry Excavating, LLC and that the excavation equipment Hite was using was the fruit or instrumentality of that offense.

42. The affidavit was knowingly false in material respects: it omitted the dispositive fact, known to Aldrich, that Henry had purchased only the assets of Henry Excavating, LLC and had never acquired ownership of the LLC; it omitted that Henry's parents had abandoned the entity; and it represented a business-name dispute as identity theft. Had the omitted facts been disclosed and the false statements corrected, probable cause would not have existed. The affidavit is unlawful under the principles of *Franks v. Delaware,* 438 U.S. 154 (1978).

43. On May 4, 2023, Aldrich—relying upon the warrant procured by the false affidavit—confronted Hite in a restaurant acting under color of state law and pursuant to a warrant obtained through a materially false and misleading affidavit. Aldrich seized Hite in a restaurant parking lot in Osceola County. Aldrich approached Hite from behind

9

with his service weapon drawn, pointed the firearm at him, and ordered him out of the truck at gunpoint. This constituted an unreasonable seizure of Hite's person accomplished through an excessive and coercive show of force, in violation of the Fourth Amendment. Aldrich then seized Hite's truck and cellular phone without lawful justification. Following the seizure, Aldrich failed to provide Hite with any means of transportation, leaving him stranded and further compounding the unlawful deprivation of his liberty and property.

44.     Between May 4 and May 6, 2023, Aldrich—relying upon the same warrant— seized the equipment Hite used to run his excavation business. Following the seizure, Hite's excavation business, which had been generating approximately five hundred thousand dollars per year in net income, was unable to operate.

45.     On November 15, 2023, an assistant prosecuting attorney for Clare County contacted Hite's counsel and asked whether Hite would consent to the disposition of the seized equipment. Through counsel, Hite refused consent and demanded return of the equipment. Clare County nevertheless released the equipment not to Hite, but to his secured lenders. Hite's excavation business collapsed.

46.     Aldrich then lobbied the Office of the Michigan Attorney General and/or state prosecutors to bring criminal identity-theft charges against Hite. The State of Michigan declined to prosecute, recognizing, on information and belief, that no identity theft had occurred.

47.     Following the collapse of the excavation business, Bureau purchased the Buckhorn Saloon and its underlying land on a contract for deed from Defendant Krantz.

Bureau made every payment under the contract for deed when due, substantially improved the Buckhorn's operations, and materially increased its value.

48.     Unwilling to accept the State's refusal to prosecute, Aldrich persuaded the Clare County Prosecuting Attorney's Office to bring the criminal-enterprise charges the State had declined. Aldrich's lobbying, and the prosecutor's decision to proceed where the State would not, is the direct product of Aldrich's influence and of a county policy or custom of acquiescence to Aldrich's judgments.

49.     Aldrich tipped off Krantz that charges were imminent against Hite and Bureau. The county's theory was, in substance, that charging Bureau—who had minimal involvement in Hite's land-clearing operation—would pressure Hite into a plea.

50.     Armed with Aldrich's tip, Krantz launched a campaign of trivial, pretextual defaults under the contract for deed. The notices concerned minor items and were issued to manufacture a pretext for retaking the Buckhorn the moment Bureau was arrested and unable to respond. Because Bureau and Hite were unaware the criminal charges were coming, Bureau retained counsel and began responding to Krantz's notices on the assumption they were ordinary commercial disputes.

51.     Aldrich also tipped off Defendant SanCraint, who in turn tipped off CAT Financial and persuaded CAT Financial to initiate or accelerate a judgment-enforcement action against Bureau. On February 2, 2026, SanCraint and his Doe collection officers appeared at Bureau's residence at 1600 Spring Avenue, Clare County, to execute CAT Financials' judgment.

52.     The parcel at 1610 Spring Avenue is adjacent to but legally distinct from 1600 Spring Avenue. The 1610 parcel is owned by a limited liability company and was, at all times relevant hereto, subject to an active lease agreement between the LLC (through Bureau) and a third-party tenant. The lease was in good standing, the tenant was in lawful possession, and no judgment, execution, writ, or other legal process authorized by any court named 1610 Spring Avenue or its tenant as a subject of enforcement.

53.     SanCraint was aware, or should have been aware, that the execution authority from CAT Financials' judgment ran solely to 1600 Spring Avenue. No writ of execution, court order, or other legal process authorized SanCraint or any collection agent to enter, search, or remove anything from 1610 Spring Avenue.

54.     Notwithstanding the foregoing, at Aldrich's direction conveyed by telephone— SanCraint was on the telephone with Aldrich during the collection action—SanCraint and his Doe collection agents crossed the property boundary and entered 1610 Spring Avenue without permission, without legal process authorizing entry, and without the consent of the tenant or the property owner.

55.     Bureau was present and expressly warned SanCraint that the 1610 parcel was subject to a lease held by a third-party tenant and that neither SanCraint nor his agents had any authority over that parcel. SanCraint ignored the warning and continued the entry. During the entry, SanCraint bragged that the events of February 2, 2026, were "just the beginning" and that "something more" was coming—a reference to the impending criminal charges he had learned of from Aldrich.

56.     While SanCraint and his agents were present on the 1610 parcel, the Doe collection agents antagonized the dogs that were inside the adjacent residence, making

12

faces through windows and yelling at them, visibly agitating the animals. SanCraint personally observed this conduct and did not stop it, despite Bureau's request that he do so.

57. After the collection agents left on February 4, 2026, a friend of Bureau's brought her daughters back to the house. When the dogs were let outside, one of the dogs bit Bureau's friend's hands and then attacked six-year-old L.H. L.H. suffered severe injuries to her face and shoulder and was transferred to a major children's hospital where she underwent facial reconstructive surgery, dental surgery, and other medical treatment. The dog was euthanized ten days after the attacks.

58. On February 19, 2026, Krantz filed a civil action against Bureau seeking to reclaim the Buckhorn. Krantz's complaint referred to criminal charges that had not been announced, demonstrating that Krantz had advance notice of imminent criminal proceedings, the only plausible source of which was Aldrich.

59. On February 20, 2026, Bureau self-surrendered on criminal enterprise charges filed by Clare County. The court set bond at one hundred thousand dollars per count—an extraordinarily high amount—and entered a no-contact order barring communication between Bureau and Hite. Bureau lacked the resources to post bond and was imprisoned at Clare County Jail from February 20, 2026, until March 12, 2026. During the jail intake process, Aldrich had Bureau served with Krantz's civil complaint.

60. On February 22, 2026, Bureau—from the Clare County Jail, using the jail's recorded communication network—contacted the Buckhorn's employee, Tiffany, and discussed an upcoming scheduled propane delivery at the restaurant.

13

61.     On February 26, 2026, Bureau learned that the passwords on the restaurant's Gmail account and Facebook account had been changed without her authorization, locking her and her authorized representatives out of the accounts.

62.     On February 28, 2026, Hite learned from a Buckhorn employee that Krantz had been openly bragging that he had an "inside man" at the Clare County Jail—the John Doe Jail Informant—who was monitoring Bureau's jail communications and leaking them to Krantz. Plaintiffs allege on information and belief that the changing of the Gmail password and Krantz's pre-emptive propane payment were the product of information fed to him by the John Doe Jail Informant, with the knowledge and approval of Aldrich.

63.     The object and effect of the scheme: Krantz's motive was to retake the Buckhorn and pocket Bureau's equity and improvements. Aldrich's motive was to avenge James Henry, to punish Hite for the personal animosity Aldrich held towards him, and to extract property and liberty from Hite and Bureau by means of public office. CAT Financials' motive was collection with the benefit of a sheriff's tip. SanCraint's motive was the fees and assets incident to his trade, enhanced by the official cover that an on-scene telephone line to a sheriff's detective provides. The Doe Jail Informant's motive, on information and belief, was personal relationship with or compensation from Krantz and/or Aldrich. Together these Defendants operated as an association-in-fact enterprise whose common purpose was the deprivation of Plaintiffs' property, liberty, and peace of mind.

## CLAIMS FOR RELIEF

### Count I — 42 U.S.C. § 1983: Fourth Amendment Unlawful Seizure of the Person (Aldrich, individually)

14

64.     Plaintiffs reallege the foregoing.

65.     On May 4, 2023, Detective Aldrich, acting under color of state law, approached Hite from behind in a restaurant parking lot with his service weapon drawn, pointed the firearm at Hite, and ordered Hite out of his truck at gunpoint. A reasonable person in Hite's position would not have believed he was free to leave.

66.     Aldrich's conduct was a seizure within the meaning of the Fourth Amendment under *Terry v. Ohio,* 392 U.S. 1 (1968), and *Brendlin v. California,* 551 U.S. 249 (2007).

67.     Aldrich lacked probable cause, reasonable suspicion, or any lawful basis because the only predicate for his suspicion, the identity-theft allegation, was a product of his knowingly false investigation.

68.     The seizure was objectively unreasonable and violated clearly established law; no reasonable officer could have believed drawing and pointing at an unresisting citizen in a public lot on a knowingly manufactured pretext was lawful. Hite is entitled to compensatory and punitive damages.

## Count II — 42 U.S.C. § 1983: Fourth Amendment Unlawful Seizure of Truck and Cell Phone (Aldrich, individually)

69.     Plaintiffs reallege the foregoing.

70.     On May 4, 2023, Aldrich, acting under color of state law and without a valid warrant, probable cause, or applicable exigency, seized Hite's truck and cell phone. The seizures were meaningful interferences with Hite's possessory interests within the meaning of *United States v. Jacobsen,* 466 U.S. 109 (1984). No exception to the warrant requirement applied. Hite is entitled to compensatory and punitive damages.

15

## Count III — 42 U.S.C. § 1983: Fourth Amendment Unlawful Seizure of Excavation Equipment — Franks v. Delaware Theory (Aldrich, individually)

71.     Plaintiffs reallege the foregoing.

72.     Between May 4 and May 6, 2023, Aldrich seized Hite's excavation equipment pursuant to a warrant procured by an affidavit that was false in material respects and that omitted material facts known to Aldrich, including that James Henry had purchased only the assets of Henry Excavating, LLC and never owned the LLC; that Henry's parents had abandoned the entity; and that any restoration of good standing was the product of an unauthorized filing made at Aldrich's direction.

73.     Aldrich made the false statements and omissions deliberately or with reckless disregard for their truth or falsity.

74.     With the false statements excised and the omissions corrected, the affidavit would not have supported probable cause. The warrant was therefore invalid, and the seizure violated the Fourth Amendment under *Franks v. Delaware*, 438 U.S. 154 (1978), and its Sixth Circuit progeny, including *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). Hite suffered the loss of the equipment, the destruction of his excavation business, and loss of approximately five hundred thousand dollars in annual net income.

## Count IV — 42 U.S.C. § 1983: Fourth Amendment Malicious Prosecution (Aldrich, individually)

75.     Plaintiffs reallege the foregoing.

76.     Aldrich, by submitting the false affidavit, pressuring the State, and thereafter procuring Clare County's decision to charge Bureau, made, influenced, or participated in

16

the decision to prosecute in the absence of probable cause. Hite suffered a Fourth Amendment deprivation of liberty by virtue of the May 4, 2023, seizure and the continuing seizure of his equipment; Bureau has suffered an ongoing Fourth Amendment deprivation of liberty by virtue of her February 20, 2026, detention.

77.     The state proceedings against Bureau remain pending; under *Thompson v. Clark*, 596 U.S. 36 (2022), the favorable-termination element is pled prospectively as to Bureau and will ripen upon acquittal, dismissal, or other termination indicative of innocence.

## Count V — 42 U.S.C. § 1983: Fabrication of Evidence and Deprivation of Property Without Process (Aldrich, individually)

78.     Plaintiffs reallege the foregoing.

79.     Aldrich fabricated evidence—the false sheriff's complaint, the unauthorized Michigan Secretary of State filing, and the false affidavit—and used that fabricated evidence to deprive Hite and Bureau of their liberty and property. The fabrication and use of knowingly false evidence to initiate or sustain criminal process violates substantive due process under *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006). The county's release of Hite's equipment to lenders over Hite's express objection separately violated procedural due process.

## Count VI — 42 U.S.C. § 1983: Conspiracy with Private Actors (Aldrich, Henry, Krantz, SanCraint, CAT Financial, Doe Jail Informant)

80.     Plaintiffs reallege the foregoing.

81.     Defendants Aldrich, Henry, Krantz, SanCraint, CAT Financial, and the Doe Jail Informant reached an agreement and acted in concert to deprive Plaintiffs of rights

secured by the Constitution and laws of the United States. Each participant committed overt acts in furtherance of the conspiracy, including the procurement of false complaints, dissemination of nonpublic information, coordination of collection activities, and interference with Plaintiffs' property, business interests, and liberty. SanCraint and CAT Financial are state actors for purposes of this Count under *Dennis v. Sparks*, 449 U.S. 24 (1980).

82.     The shared objectives included the unlawful seizure of Hite's equipment and the Buckhorn; the unlawful trespassory entry upon the leased premises at 1610 Spring Avenue; the orchestrated arrest and pretrial detention of Bureau; and the monitoring and exfiltration of Bureau's jail communications. Each Plaintiff was injured by the conspiracy.

### Count VII — 42 U.S.C. § 1983: Monell Liability (Clare County)

83.     Plaintiffs reallege the foregoing.

84.     Clare County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), on a final-policymaker and ratification theory. The Clare County Prosecuting Attorney, as final policymaker for county charging decisions, made the discretionary decision to initiate criminal-enterprise charges against Bureau on facts the Michigan Attorney General's office had already reviewed and declined to prosecute. The Sheriff's Office's pattern of deferring to Aldrich's judgments without supervisory correction— including a firearm seizure in a public parking lot on a manufactured identity-theft theory, a warrant affidavit riddled with falsities, and a detective running a telephone line to a private collection operator during an execution—constitutes a county policy, custom,

and ratification of the underlying constitutional violations that was the moving force behind Plaintiffs' injuries.

85.     This pattern further reflects a failure to train and supervise officers regarding the constitutional limits of warrant applications, property seizures, and coordination with private actors during civil enforcement actions. Clare County's deliberate indifference to these known or obvious consequences was a moving force behind violations of Plaintiffs' constitutional rights.

## Count VIII — Federal Civil RICO, 18 U.S.C. § 1962(c) (Aldrich, Henry, Krantz, SanCraint, CAT Financial, Doe Jail Informant)

86.     Plaintiffs reallege the foregoing.

87.     Defendants constituted an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), consisting of law enforcement officials, private financial institutions, collection agents, and associated individuals, including but not limited to Aldrich, Clare County, CAT Financial, and SanCraint.

88.     The enterprise had a common purpose: to obtain and exercise control over property and assets through the coordinated use of criminal investigations, civil enforcement mechanisms, and related proceedings.

89.     The enterprise functioned as a continuing unit, with relationships among its members demonstrated by coordinated communications, mutual reliance on information provided by one another, and joint participation in actions taken to further the enterprise's objectives.

90.     Each member of the enterprise played a distinct role, including: (a) law enforcement Defendants initiating and advancing criminal investigations based on false or misleading information; (b) private financial Defendants providing information, direction, and incentive for enforcement actions; and (c) collection agents and repossession actors executing physical entry and seizure activities, including at locations not authorized by any lawful order.

91.     Defendants engaged in a pattern of racketeering activity consisting of multiple predicate acts within the meaning of 18 U.S.C. § 1961(1), including but not limited to: (a) wire fraud, through the transmission of false statements and material omissions via electronic communications to induce law enforcement action and judicial authorization; (b) mail fraud, through use of interstate mail to transmit documents and communications furthering the scheme; and (c) obstruction of justice, through the manipulation and misuse of criminal investigative processes to achieve improper objectives.

92.     These predicate acts were related and continuous, sharing the same or similar purposes, participants, victims, and methods of commission, and were not isolated events but part of an ongoing scheme that posed a threat of continued criminal activity.

93.     The enterprise's activities affected interstate commerce, including using interstate communications, financial transactions, and multi-state business operations.

94.     As a direct and proximate result of Defendants' racketeering activity, Plaintiffs suffered injury to their businesses and property, including loss of use of premises, interference with contractual rights, financial damages, and other compensable harm.

**Detailed Predicate Acts and Coordinated Timeline of Conduct**

95.     Defendants' racketeering activity included multiple predicate acts of wire fraud and related misconduct, pled with particularity as follows:

96.     On or about dates presently known to Defendants but within the relevant period, Defendant Aldrich, in coordination with private Defendants, transmitted and relied upon materially false and misleading information in support of a criminal investigation and warrant process, including omissions regarding the ownership, control, and location of property.

97.     These communications were made via interstate wire transmissions, including electronic communications, law enforcement databases, recorded calls, and digital warrant submissions, and were intended to induce judicial authorization and law enforcement action that would not have otherwise occurred.

98.     Defendant CAT Financial, through its agents and representatives, communicated with law enforcement regarding the identification and location of assets, providing information that was incomplete, misleading, or knowingly used beyond its lawful scope, and which was relied upon to facilitate enforcement actions.

99.     Defendant SanCraint, acting in coordination with both law enforcement and CAT Financial, engaged in execution activities based on these communications, including at locations not covered by any valid court order or writ.

100.    These acts were not independent but were interrelated and mutually reinforcing, with each Defendant relying on the conduct and representations of others to advance the scheme.

## Coordinated Timeline of Events

101.   Defendants' conduct followed a coordinated sequence demonstrating a unified scheme: (a) initial communications between private financial actors and law enforcement identifying assets and raising allegations; (b) transmission of information containing material misrepresentations and omissions to law enforcement and judicial officers; (c) initiation and advancement of a criminal investigation based on such information; (d) coordination between law enforcement and private actors regarding property location and enforcement strategy; (e) issuance of limited legal process directed at 1600 Spring Avenue; (f) Defendants' knowledge that 1610 Spring Avenue was a separate parcel not covered by any order; (g) direct communication from Plaintiffs notifying Defendants of the separate address and lack of authority; (h) continued coordination and decision to proceed despite such notice; (i) the February 2, 2026, entry onto 1610 Spring Avenue by SanCraint at the direction of Aldrich; (j) exercise of dominion and control over the premises and its contents without lawful authority; and (k) resulting damages, including constitutional violations, property interference, and personal injury.

102.   This sequence demonstrates that Defendants' actions were not accidental, mistaken, or isolated, but were undertaken pursuant to a coordinated plan involving multiple actors performing distinct but interdependent roles.

103.   The predicate acts are related in purpose, method, participants, and results, and amount to or pose a threat of continued criminal activity, thereby constituting a pattern of racketeering activity under 18 U.S.C. § 1962.

104.   As a direct and proximate result of these predicate acts and coordinated conduct, Plaintiffs suffered injury to business and property, including loss of possessory rights, financial harm, and consequential damages.

### Count IX — Federal RICO Conspiracy, 18 U.S.C. § 1962(d)

105.   Plaintiffs reallege the foregoing.

106.   Each Defendant named in Count VIII knowingly agreed that a member of the enterprise would commit at least two predicate acts of racketeering in furtherance of the conduct of the enterprise's affairs, and each agreed to the overall criminal objective of the enterprise. *Salinas v. United States,* 522 U.S. 52 (1997).

### Count X — Michigan Criminal-Enterprise Civil Remedy, MCL 750.159j(9) (All Conspiracy Defendants)

107.   Plaintiffs reallege the foregoing.

108.   Defendants Aldrich, Henry, Krantz, SanCraint, CAT Financial, and the Doe Jail Informant have engaged in a pattern of racketeering activity within the meaning of MCL 750.159f–159i and have conducted or participated in the affairs of an enterprise through that pattern. Predicate Michigan offenses include identity-theft-based filings, unauthorized computer access, and obstruction—all constituting predicate acts under the Michigan RICO statute. MCL 750.159j(9) authorizes an aggrieved person to recover actual damages sustained and attorney's fees.

### Count XI — Stored Communications Act, 18 U.S.C. § 2701 (Doe Jail Informant, Krantz, Aldrich)

109.    Plaintiffs reallege the foregoing.

110.    Bureau's jail communications were stored electronic communications in a facility through which an electronic communication service was provided, within the meaning of 18 U.S.C. §§ 2510 and 2701. The Doe Jail Informant intentionally accessed those communications without authorization, or in excess of authorization, and thereby obtained, altered, or prevented authorized access to them. Krantz and Aldrich knowingly received and used the contents. Bureau has suffered loss of privacy, competitive disadvantage in litigation, and emotional distress.

## Count XII — Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Krantz, Doe Acting at His Direction)

111.    Plaintiffs reallege the foregoing.

112.    The Buckhorn's Gmail account is a protected computer within the meaning of 18 U.S.C. § 1030(e)(2). Krantz, directly or through an agent acting at his direction, intentionally accessed the Gmail account without authorization or in excess of authorized access and altered its password, thereby impairing Bureau's ability to access and use the account, and causing loss in excess of $5,000 in the aggregate during a one-year period in investigative and remediation costs and in disruption of the Buckhorn's business. Plaintiffs invoke the civil remedy of 18 U.S.C. § 1030(g).

## Count XIII — Michigan Computer Crime, MCL 752.795 (Krantz, Doe Acting at His Direction)

113.    Plaintiffs reallege the foregoing.

24

114.    Plaintiffs plead, in addition to the CFAA claim, a Michigan-law violation under MCL 752.795 and the civil remedy under MCL 752.797(3) for the unauthorized access and alteration of the Buckhorn Gmail account.

## Count XIV — Michigan Common-Law Malicious Prosecution (Aldrich, Henry, Clare County for Indemnity/Official Capacity)

115.    Plaintiffs reallege the foregoing.

116.    Defendants initiated or caused to be initiated criminal proceedings against Bureau without probable cause, with malice, and by means of knowingly false statements. The proceedings remain pending; the claim is pled subject to favorable termination under Michigan law. *Matthews v. Blue Cross & Blue Shield,* 456 Mich. 365 (1998).

## Count XV — Michigan Common-Law Abuse of Process (Aldrich, Henry, Krantz, SanCraint, CAT Financial)

117.    Plaintiffs reallege the foregoing.

118.    Defendants used regularly issued process—the May 2023 search warrant, the Clare County criminal charges, Krantz's contract-for-deed notices and civil suit, and CAT Financials' judgment execution—for ulterior purposes: to destroy Hite's business, to retake the Buckhorn for Krantz's profit, to punish Hite for James Henry's grudge, and to extract settlement leverage. Each Defendant committed an overt act in the use of process not proper in the regular prosecution of the proceeding. *Friedman v. Dozorc,* 412 Mich. 1 (1981).

## Count XVI — Michigan Common-Law False Arrest and False Imprisonment (Aldrich, Clare County, Official Capacity)

119.    Plaintiffs reallege the foregoing.

120.    Aldrich arrested and imprisoned Hite at gunpoint on the May 4, 2023, parking-lot seizure without legal justification and caused the pretrial detention of Bureau on charges procured by knowing falsity. The restraints were intentional, unlawful, and without consent.

## Count XVII — Trespass to Land and Illegal Entry Upon Leased Premises (SanCraint, CAT Financial, Doe Collection Agents, Aldrich)

121.    Plaintiffs reallege the foregoing.

122.    At all relevant times, 1610 Spring Avenue was subject to an active, lawful lease agreement. The tenant held lawful possessory rights to the premises under Michigan law and under the lease. Michigan law recognizes the right of a tenant in lawful possession to exclude all persons—including creditors, collection agents, and law enforcement officers acting without valid process—from entering the leased premises. See MCL 554.601 et seq.; *Hinojosa v. Department of Natural Resources*, 263 Mich. App. 537 (2004).

123.    On February 2, 2026, SanCraint and the Doe Collection Agents, at Aldrich's direction and on CAT Financials' behalf, physically entered 1610 Spring Avenue without any legal process running to that parcel, without the consent of the tenant, without the consent of the property owner, and over the express objection of Bureau, who warned them they had no authority over that parcel.

124.    No writ of execution, order of the court, or legal process of any kind authorized SanCraint, the Doe Collection Agents, CAT Financial, or Aldrich to enter 1610 Spring

26

Avenue. The authority to act, to the extent any existed, was limited to the adjacent parcel at 1600 Spring Avenue.

125.   The entry constituted a common-law trespass to land—an intentional, unauthorized physical entry upon the real property of another—giving rise to liability without proof of actual damage. *Burns v. Brady*, 300 Mich. 59 (1942).

126.   The entry also constituted trespass under color of process. SanCraint and the Doe Collection Agents purported to act pursuant to judgment-enforcement authority but exceeded the geographic and legal scope of that authority by entering a separate parcel occupied by a non-judgment-debtor tenant. An officer or collection agent who enters premises not covered by a valid writ acts as a trespasser ab initio. *Plummer v. Dill*, 156 Mass. 426 (1892); see also Restatement (Second) of Torts § 214. Defendants' conduct exceeded not only geographic limitations but also the identity of the judgment debtor, as the premises were occupied by a non-party tenant whose possessory rights were independent of any enforcement action.

127.   The entry violated the tenant's rights under MCL 554.601 et seq., which protects a lawful tenant's right to quiet enjoyment of leased premises. Defendants' forced entry without consent, valid process, or emergency justification constitutes an illegal interference with that protected possessory interest.

128.   Aldrich's direction of the entry, conveyed by telephone during the collection action, renders him individually liable both as the directing state actor and as a co-conspirator who used his color of state authority to empower an otherwise unauthorized entry.

129.    CAT Financial is vicariously liable for SanCraint's and the Doe Collection

Agents' conduct under respondeat superior to the extent SanCraint acted within the scope

of his agency relationship with CAT Financial. In the alternative, CAT Financial is liable

for negligent hiring, negligent supervision, and negligent entrustment of collection

activities to an operator who exceeded the scope of lawful execution authority.

130.    As a direct and proximate result of the unlawful entry, the tenant suffered

interference with his peaceful possession of the leased premises, emotional distress, and

such further damages as shall be proven at trial. Bureau, as landlord and party in interest,

suffered damages to her property interest and to her tenancy relationship. Hite suffered

damages arising from the disturbance at the adjacent property he also occupied.

## Count XVIII — 42 U.S.C. § 1983: Fourth Amendment Unlawful Entry Upon Leased Premises (Aldrich; SanCraint and CAT Financial as Joint Actors)

131.    Plaintiffs reallege the foregoing.

132.    On February 2, 2026, Aldrich, acting under color of state law, directed SanCraint

by telephone to enter 1610 Spring Avenue. SanCraint and CAT Financial, acting jointly

with Aldrich, entered the leased premises without a warrant, without valid legal process

running to that parcel, and without exigent circumstances. SanCraint and CAT Financial

are state actors for purposes of this Count under *Dennis v. Sparks*, 449 U.S. 24 (1980).

133.    The Fourth Amendment prohibits warrantless entry into a home or lawfully

occupied premises without consent, a valid warrant, or recognized exception. *Florida v.
Jardines*, 569 U.S. 1 (2013); *Payton v. New York*, 445 U.S. 573 (1980). A tenant's leased

dwelling is fully protected under the Fourth Amendment to the same degree as an owner-occupied home. *Minnesota v. Olson,* 495 U.S. 91 (1990).

134. The entry was objectively unreasonable, violated clearly established law, and caused injury to all Plaintiffs in interest with respect to 1610 Spring Avenue.

## Count XIX — 42 U.S.C. § 1983: Fourth Amendment Unlawful Seizure of Asher's Property (Aldrich; SanCraint and CAT Financial as Joint Actors)

135. Plaintiffs reallege the foregoing.

136. On February 2, 2026, Aldrich, acting under color of state law, directed SanCraint by telephone to conduct seizure activity at 1610 Spring Avenue. SanCraint and CAT Financial, acting jointly with Aldrich, entered and exercised dominion and control over the premises and its contents without legal authority, without a warrant or writ of execution running to 1610 Spring Avenue, and over Bureau's express warning that the parcel was not subject to any judgment enforcement. SanCraint and CAT Financial are state actors for purposes of this Count under *Dennis v. Sparks,* 449 U.S. 24 (1980).

137. The conduct constituted a meaningful interference with the lawful possessory interests of the tenant in possession of 1610 Spring Avenue, including the right to exclude others and to maintain control over the premises and effects therein, within the meaning of the Fourth Amendment.

138. The seizure was objectively unreasonable. No warrant, valid legal process, or recognized exception to the warrant requirement authorized Defendants' actions. *United States v. Jacobsen,* 466 U.S. 109 (1984).

139. As a direct and proximate result, Plaintiffs suffered interference with protected possessory interests, invasion of privacy, and resulting damages, and are entitled to compensatory and punitive damages.

## Count XX — Statutory Conversion, MCL 600.2919a (Aldrich, SanCraint, CAT Financial, Krantz, Doe Collection Agents)

140. Plaintiffs reallege the foregoing. Defendants converted Hite's excavation equipment, truck, and cell phone; Bureau's and Hite's interest in the Buckhorn's Gmail account and related property; and Asher's personal property seized from 1610 Spring Avenue. Defendants acted with knowledge that the property was stolen, embezzled, or converted, or they aided in the concealment of such property. Plaintiffs are entitled under MCL 600.2919a to treble damages, costs, and reasonable attorney fees, in addition to common-law conversion damages pled below.

## Count XXI — Common-Law Conversion (Same Defendants as Count XX)

141. Plaintiffs reallege the foregoing and plead common-law conversion as a distinct, intentional exercise of dominion over Plaintiffs' chattels, including Asher's personal property, inconsistent with Plaintiffs' rights, causing actual harm.

## Count XXII — Trespass to Chattels (Same Defendants as Count XX)

142. Plaintiffs reallege the foregoing and plead in the alternative that, to the extent any Defendant's interference with chattels is characterized as short of conversion, each such interference constituted a trespass to chattels causing actual harm to the chattels and to Plaintiffs' possessory interests, including Asher's possessory interest in his personal property and leased premises.

## Count XXIII — Tortious Interference with Contract and With Business Relations (Aldrich, Krantz)

143.    Plaintiffs reallege the foregoing. Bureau held a valid contract for deed with Krantz for the Buckhorn. Aldrich, knowing of the contract, intentionally and improperly induced Krantz to breach or constructively breach that contract by tipping him off to the impending charges and coordinating a coercive default campaign. Krantz intentionally and improperly interfered with Bureau's business relationships with suppliers, employees, and customers by pre-empting vendor payment, altering account credentials, and timing his civil action to her arraignment. *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83 (2005).

## Count XXIV — Civil Conspiracy (All Conspiracy Defendants)

144.    Plaintiffs reallege the foregoing. Defendants combined to accomplish, through concerted action, the unlawful purposes and the use of unlawful means set forth above— including the trespassory entry upon and seizure of property from Asher's leased premises—and committed the overt acts pled. *Admirals Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300 (1992).

## Count XXV — Intentional Infliction of Emotional Distress (All Appropriate Defendants)

145.    Plaintiffs reallege the foregoing. Aldrich's conduct in drawing a firearm on Hite at a restaurant parking lot on a manufactured pretext; orchestrating the destruction of Hite's business; engineering Bureau's detention under a no-contact order separating a mother from her husband; and directing SanCraint and his agents to illegally enter a tenant's protected leased dwelling and seize his personal property, thereby setting in

motion events that resulted in a young child's severe facial injuries, taken singly or together, constitutes extreme and outrageous conduct beyond the bounds of civilized society. SanCraint's indifference to the antagonization of Hite's dogs—performed with a sheriff's detective on the line—likewise qualifies. Each Plaintiff, including Asher, has suffered severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (1985).

## Count XXVI — Negligence and Negligent Infliction of Emotional Distress (SanCraint, Doe Collection Agents, CAT Financial)

146. Plaintiffs reallege the foregoing. SanCraint, as a professional asset-recovery agent in charge of a team at a residence with visible pets and children's belongings, owed a duty of reasonable care to those on the premises, including a duty to control his agents and to refrain from conduct foreseeably likely to provoke domestic animals. His agents breached that duty by antagonizing the dogs; SanCraint breached the duty by failing to supervise and stop the antagonization after being asked to do so by Bureau. The breach was a proximate cause of the ensuing attack on L.H.: the antagonization left the animals in a heightened state of stress and aggression, and an attack within hours of such provocation was a foreseeable consequence, including the well-recognized principle that domestic animals subjected to agitation, provocation, or stress may exhibit unpredictable and aggressive behavior toward nearby individuals, particularly children, within a short temporal window following such provocation.

147. CAT Financial is liable for SanCraint's conduct under respondeat superior and, alternatively, under negligent hiring and negligent supervision theories.

## Count XXVII — Defamation and Defamation Per Se (Aldrich, Henry, Krantz, SanCraint)

148.   Plaintiffs reallege the foregoing. Defendants published false statements of fact accusing Hite of identity theft and of criminal conduct—including in Henry's false sheriff's complaint, Aldrich's false affidavit, SanCraint's boasts during the February 2, 2026, collection, and Krantz's boasts about his jail contact. The statements accused Plaintiffs of crimes and of conduct injurious to their trade and profession, and therefore constitute defamation per se. *Mitan v. Campbell,* 474 Mich. 21 (2005). Plaintiffs have suffered reputational harm, business loss, and emotional distress.

## Count XXVIII — Assault (Michael Henry)

149.   Plaintiffs reallege the foregoing. Michael Henry, at an auction attended by Hite, uttered words and acted in a manner reasonably calculated to place Hite in apprehension of an imminent harmful or offensive contact, conditioned only on the happenstance of third-party presence. Pled in the alternative should the trier of fact find that the conditional framing did not negate Hite's reasonable apprehension. *Espinoza v. Thomas,* 189 Mich. App. 110 (1991).

## Count XXIX — Loss of Consortium (Bureau Derivative of Hite; Hite Derivative of Bureau)

150.   Plaintiffs reallege the foregoing. Each spouse has been deprived of the society, companionship, conjugal affection, and services of the other as a proximate result of Defendants' conduct: Hite by Bureau's detention under the no-contact order; Bureau by Hite's injuries and by the destruction of their family economic life. *Berger v. Weber,* 411 Mich. 1 (1981).

## Count XXX — L.H.'s Direct Claims (SanCraint, Doe Collection Agents, CAT Financial; Conspiracy Defendants)

151.    Plaintiffs reallege the foregoing. L.H., through her next friend Bureau, brings direct claims against SanCraint, the Doe Collection Agents, and CAT Financial for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress arising from the antagonization of the dogs and the foreseeable consequence of that antagonization—the attack on L.H. within hours of the Defendants' departure. L.H. has suffered severe facial injuries, the loss of her family dog, and continuing physical and emotional sequelae. Defendants are jointly liable for the foreseeable consequence of the common scheme.

## RESERVATION OF CLAIMS

152.    Plaintiffs reserve the right to amend claims under Michigan's Wrongful Imprisonment Compensation Act, MCL 691.1751 et seq., should Bureau's charges result in a reversal or exoneration; to add federal malicious-prosecution damages for Bureau upon favorable termination under *Thompson v. Clark*, 596 U.S. 36 (2022); and to add or substitute Doe Defendants upon identification.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Defendants as follows:

(a) For compensatory damages in amounts to be proven at trial, including but not limited to the fair market value of Hite's excavation equipment; lost profits of his excavation

34

business at approximately five hundred thousand dollars per year; and all consequential economic losses flowing from the destruction of that business.

(b) For the value of Bureau's equity and improvements in the Buckhorn Saloon; the value of Asher's personal property seized from 1610 Spring Avenue; damages for the unlawful trespassory entry upon and seizure from the leased premises; the medical expenses and future care costs of L.H.; and damages for pain, suffering, emotional distress, and loss of consortium.

(c) For treble damages, costs, and reasonable attorney's fees under 18 U.S.C. § 1964(c).

(d) For actual damages and attorney fees under MCL 750.159j(9).

(e) For treble damages, costs, and reasonable attorney fees under MCL 600.2919a.

(f) For civil damages, costs, and reasonable attorney's fees under 18 U.S.C. §§ 2707 and 1030(g).

(g) For punitive damages against the individual Defendants under 42 U.S.C. § 1983 and, where available, under Michigan law; for reasonable attorney's fees and costs under 42 U.S.C. § 1988.

(h) For declaratory and injunctive relief requiring: the return of wrongfully seized property including Asher's personal property; the restoration of the Buckhorn Gmail account; the cessation of the Doe Jail Informant's unlawful monitoring; and such other equitable relief as the Court finds just.

(i) For pre- and post-judgment interest at the maximum rate allowed by law.

(j) For joint and several liability against all Defendants found to have participated in the conspiracy, racketeering enterprise, or concerted tortious conduct.

(k) For such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

[Signature page as follows]

Respectfully submitted,

_____

Gregory Hite, pro se
Inmate : 246540
Clare County Jail
255 West Main Street
Harrison, MI 48625
Date: _____

_____

Bridget Bureau, pro se
1600 Spring Ave
Lake, MI 48632
616-644-2921
bbureau0307@gmail.com
Date: 5/29/26

_____

David Asher, pro se
1610 Spring Avenue
Lake, MI 48632
719-757-5398

Dated: 5-30-26 , 2026

37
25

_____     Date: _____

Gregory Hite, Plaintiff, Pro Se
Inmate No. 246540
Clare County Jail
255 West Main Street
Harrison, MI 48625

*Gregory Hite is currently incarcerated at Clare County Jail, a named defendant in this action. His signature will be supplemented upon obtaining access to legal documents through the facility. Plaintiff Bureau, as co-plaintiff, respectfully requests the Court's accommodation pursuant to the circumstances of Mr. Hite's incarceration.*

38

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| GREGORY HITE; BRIDGET BUREAU, individually and as next friend and guardian of L.H., a minor; and DAVID ASHER, an individual | DAVID ALDRICH; CLARE COUNTY; JAMES HENRY; MICHAEL HENRY; LEE KRANTZ; KYLE SANCRAINT; CATERPILLAR FINANCIAL SERVICES CORP.; JOHN DOE COLLECTION AGENTS 1–5; JOHN DOE JAIL INFORMANT |

| (b)  County of Residence of First Listed Plaintiff | Co |  |
|---|---|---|
| Clare County, Michigan | Cla | Case:2:26-cv-11948 |

| (c)  Attorneys (Firm Name, Address, and Telephone Number) | Att |
|---|---|
| Pro Se Plaintiffs:<br>Bridget Bureau, 1600 Spring Ave., Lake MI 48632, 616-644-2921<br>Gregory Hite (Inmate #246540), Clare County Jail, Harrison MI 48625<br>David Asher, 1610 Spring Ave., Lake MI 48632 | Judge: Grey, Jonathan J.C.<br>MJ: Grand, David R.<br>Filed: 06-08-2026 At 09:17 AM<br>CMP HITE ET AL V. ALDRICH ET AL (DA<br>) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff   ☐ 2 U.S. Government Defendant   ☒ 3 Federal Question (U.S. Government Not a Party)   ☐ 4 Diversity (Indicate Citizenship in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only — Place an "X" in One Box for Plaintiff and One Box for Defendant)

N/A — This action arises under federal question jurisdiction; citizenship of parties is not at issue.

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | REAL PROPERTY / TORTS | CIVIL RIGHTS / RICO | FORFEITURE / FEDERAL / OTHER |
|---|---|---|---|
| ☐ 110 Insurance | ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | ☐ 625 Drug Related Seizure |
| ☐ 120 Marine | ☐ 220 Foreclosure | ☒ 1983 Civil Rights | ☐ 690 Other |
| ☐ 130 Miller Act | ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | |
| ☐ 140 Negotiable Instrument | ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations | ☐ 422 Appeal 28 USC 158 |
| ☐ 150 Recovery / Overpayment | ☐ 245 Tort Product Liability | ☐ 445 ADA – Employment | ☐ 423 Withdrawal 28 USC 157 |
| ☐ 151 Medicare Act | ☐ 290 All Other Real Property | ☐ 446 ADA – Other | ☐ 400 State Reapportionment |
| ☐ 152 Recovery Defaulted Student Loans | | ☐ 448 Education | ☐ 410 Antitrust |
| ☐ 153 Recovery Overpaid Vet Benefits | ☐ 310 Airplane | | ☐ 430 Banks and Banking |
| ☐ 160 Stockholders' Suits | ☐ 315 Airplane Product Liability | ☒ 470 Racketeer Influenced & Corrupt Org. | ☐ 450 Commerce |
| ☐ 190 Other Contract | ☐ 320 Assault, Libel & Slander | ☒ 895 Freedom of Information Act | ☐ 460 Deportation |
| ☐ 195 Contract Product Liability | ☐ 330 Fed. Employers' Liability | ☒ 875 False Claims Act | ☐ 480 Consumer Credit |
| ☐ 196 Franchise | ☐ 380 Other Personal Propety Damage | ☒ 890 Other Statutory Actions | ☐ 490 Cable/Sat TV |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District   ☐ 6 Multidistrict Litigation – Transfer   ☐ 8 Multidistrict Litigation – Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1983; 18 U.S.C. §§ 1962 & 1964 (RICO); 18 U.S.C. § 2701 (SCA); 18 U.S.C. § 1030 (CFAA)
Brief description of cause:
Civil rights violations; unlawful seizures; malicious prosecution; RICO enterprise; stored communications and computer fraud violations; coordinated deprivation of property, liberty, and constitutional rights; unlawful trespassory entry upon leased premise; interception of jail communications; fabrication of evidence

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   Exceeds $500,000 + treble damages

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE ___6/1___, 2026      SIGNATURE OF ATTORNEY OF RECORD  Bridget Bureau, Pro Se

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE



*Retail*

**PRIORITY MAIL EXPRESS**

## US POSTAGE PAID

### $35.90

Origin: 48622
06/04/26
2531600946-2

**IORITY MAIL EXPRESS®**

BUREAU
RING AVE
48632-9282
4-2921

1 Lb 3.50 Oz

**RDC 07**

:KEND DELIVERY

LED DELIVERY DAY: 06/08/26 06:00 PM

**B050**

S DISTRICT COURT
O BOX 913
BAY CITY MI 48707-0913

**USPS TRACKING® #**



9570 1118 7881 6155 2003 68

**UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL EXPRESS®**

EI 965 671 954 US

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)   PHONE 616 614-2921

Bridget Bureau
1600 Spring Ave.
Lake, MI 48632

DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE (    )



US District Court
P.O. Box 913
Bay City, MI

ZIP + 4® (U.S. ADDRESSES ONLY)

48708-___

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

 **PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT** (if applicable)
Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| | | | |
|---|---|---|---|
| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |

PO ZIP Code: 48622

Scheduled Delivery Date (MM/DD/YY): 6-8-26

Postage: $ 35.90

Date Accepted (MM/DD/YY): 6-4-26

Scheduled Delivery Time: ☒ 6:00 PM

Insurance Fee: $

COD Fee: $

Time Accepted: 3:52 ☐ AM ☒ PM

Return Receipt Fee: $

Live Animal Transportation Fee: $

Special Handling/Fragile: $

Sunday/Holiday Premium Fee: $

Total Postage & Fees: $ 35.90

Weight: 1 lb 3.50 oz | ☐ Flat Rate

Acceptance Employee Initials:

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY) | Time | ☐ AM ☐ PM | Employee Signature

Delivery Attempt (MM/DD/YY) | Time | ☐ AM ☐ PM | Employee Signature





WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.

DEL0865

LABEL 11-B, NOVEMBER 2023   PSN 7690-02-000-9996



PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; October 2023. All rights reserved.

**UNITED STATES POSTAL SERVICE.**